**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a foreign corporation, and THE PHOENIX INSURANCE COMPANY, a foreign corporation

      Plaintiffs,

vs.

FIGG BRIDGE ENGINEERS, INC., a Florida corporation, KATRINA COLLAZO DE ARMAS, a Florida citizen, MARQUISE RASHAAD HEPBURN, a Florida citizen, RICHARD LUIS HUMBLE, a Florida citizen, EMILY JOY PANAGOS, a Florida citizen, ERIK ROJAS, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF OSWALD GONZALEZ, LUIS ARIAS, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF ALBERTO ARIAS, ANA MARIA OVIEDO GARCIA, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF ROLANDO FRAGA, CHELSEA LEIGHANN BROWNFIELD AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF BRANDON CORY BROWNFIELD, WINSOME JOY CAMPBELL, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF NAVARO BROWN, CARLOS EDUARD BADILLO, MARTHA MERCEDES PLAZA CEVALLOS, GINA DURAN AND ORLANDO DURAN AS CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF ALEXA DURAN, ALEXANDER ESTUPINAN, EUGENIA XIOMARA ALVAREZ, RANDY HANSON AND TERRY HANSON, AS CO-PLENARY GUARDIANS OF KEVIN LEE HANSON, AND FOR KEVIN LEE HANSON, AS PARENT AND NATURAL GUARDIAN ON BEHALF OF HIS MINOR CHILDREN, MALACHI HANSON, CLAYTON HANSON, BRYCE HANSON AND BAILEE ANN HANSON, CARLOS CHAPMAN AND ERIKA CHAPMAN,

CASE NO. _____

                                                                             /

301960044v1 1008262

Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

The Travelers Indemnity Company of Connecticut ("Travelers") and The Phoenix Insurance Company ("Phoenix") sue Figg Bridge Engineers, Inc. ("Figg") and Katrina Collazo de Armas, Marquise Rashaad Hepburn, Richard Luis Humble, Emily Joy Panagos, Erik Rojas, as the Personal Representative of the Estate of Oswald Gonzalez, Luis Arias, as the Personal Representative of the Estate of Alberto Arias, Ana Maria Oviedo Garcia, as the Personal Representative of Rolando Fraga, Winsome Joy Campbell, individually and as Personal Representative of the Estate of Navaro Brown, Carlos Eduardo Badillo, Martha Mercedes Plaza Cevallos, Chelsea Leighann Brownfield as the Personal Representative of the Estate of Brandon Cory Brownfield, Gina Duran and Orlando Duran, as Co-Personal Representatives of the Estate of Alexa Duran, Alexander Estupinan, Eugenia Xiomara Alvarez, Randy Hanson and Terry Hanson, as co-plenary guardians of Kevin Lee Hanson, and for Kevin Lee Hanson, as parent and natural guardian on behalf of his minor children, Malachi Hanson, Clayton Hanson, Bryce Hanson and Bailee Ann Hanson, Carlos Chapman and Erika Chapman (collectively "the claimants"), and states as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. §2201 for the purpose of determining an actual controversy between the parties as to the scope of Travelers' and Phoenix's obligations, if any, to defend and indemnify Figg for claims arising out of the collapse of a bridge in Miami-Dade County, Florida. Phoenix further seeks reimbursement of all of the attorney's fees and costs it has incurred to defend Figg in the underlying lawsuits.

2. Travelers is a foreign corporation, incorporated under the laws of the state of

Connecticut, domiciled and with its principal place of business in Hartford, Connecticut.

3. Phoenix is a foreign corporation, incorporated under the laws of the state of Connecticut, domiciled and with its principal place of business in Hartford, Connecticut.

4. Figg is a Florida Corporation with its principal place of business in Tallahassee, Florida.

5. Katrina Collazo de Armas is a citizen and resident of Miami-Dade County, Florida.

6. Marquise Rashaad Hepburn is a citizen and resident of Miami-Dade County, Florida.

7. Richard Luis Humble is a citizen and resident of Miami-Dade County, Florida.

8. Emily Joy Panagos is a citizen and resident of Miami-Dade County, Florida.

9. Pursuant to 28 U.S.C. § 1332(c)(2), Ana Maria Oviedo Garcia, as the Personal Representative of the Estate of Rolando Fraga, is a citizen of the state of Florida because at the time of his death Rolando Fraga was living and working in Miami, Florida.

10. At the time of his death, Rolando Fraga was not a citizen of the State of Connecticut.

11. Pursuant to 28 U.S.C. § 1332(c)(2), Erik Rojas, as the Personal Representative of the Estate of Oswald Gonzalez, is a citizen of the state of Florida because at the time of his death Oswald Gonzalez was living and working in Miami, Florida.

12. At the time of his death, Oswald Gonzalez was not a citizen of the State of Connecticut.

13. At the time of his death, Luis Arias was not a citizen of the State of Connecticut.

14. Pursuant to 28 U.S.C. § 1332(c)(2), Luis Arias, as the Personal Representative of

301960044v1 1008262

the Estate of Alberto Arias, is a citizen of the state of Florida because at the time of his death Alberto Arias was living and working in Miami, Florida.

15. Pursuant to 28 U.S.C. § 1332(c)(2), Chelsea Leighann Brownfield, as the Personal Representative of the Estate of Brandon Cory Brownfield, is a citizen of the state of Florida because at the time of his death Brandon Cory Brownfield was living and working in Miami, Florida.

16. At the time of his death, Brandon Cory Brownfield was not a citizen of the State of Connecticut.

17. Pursuant to 28 U.S.C. § 1332(c)(2), Winsome Joy Campbell, as the Personal Representative of the Estate of Navarro Brown, is a citizen of the state of Florida because at the time of his death Navarro Brown was living in Fort Lauderdale, Florida.

18. At the time of his death, Navarro Brown was not a citizen of the State of Connecticut.

19. Winsome Joy Campbell, as a claimant in her individual capacity, is a citizen of the State of Florida.

20. Carlos Eduardo Badillo is a citizen and resident of Miami-Dade County, Florida.

21. Martha Mercedes Plaza Cevallos is a citizen and resident of Miami-Dade County, Florida.

22. Pursuant to 28 U.S.C. § 1332(c)(2), Gina Duran and Orlando Duran, as Co-Personal Representatives of the Estate of Alexa Duran, are citizens of the state of Florida because at the time of his death Alexa Duran was a citizen and resident of Miami, Florida.

23. At the time of her death Alexa Duran was not a citizen of the State of Connecticut.

24. Carlos Chapman is a citizen and resident of Miami-Dade County, Florida.

25. Erika Chapman is a citizen and resident of Miami-Dade County, Florida.

26. Alexander Estupinan is a citizen and resident of Miami-Dade County, Florida.

27. Eugenia Xiomara Alvarez is a citizen and resident of Miami-Dade County, Florida.

28. Randy Handy Hanson is a citizen and resident of Hillsborough County, Florida.

29. Terry Hanson is a citizen and resident of Hillsborough County, Florida.

30. Jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

31. All conditions precedent have occurred, been performed, or have been waived.

32. Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, because one or more defendants reside here, and the events or omissions giving rise to the claims set forth below occurred here.

## ALLEGATIONS OF THE UNDERLYINGS COMPLAINTS

33. On March 19, 2018, Marquise Rashaad Hepburn sued Figg, MCM, Louis Berger U.S. and Network Engineering in the Eleventh Judicial Circuit Court, in and for Miami-Dade County, Florida for damages he allegedly sustained when the bridge collapsed. A copy of his complaint is attached as Exhibit "A."

34. On March 20, 2018, Emily Joy Panagos sued Figg, MCM, Network Engineering and Louis Berger U.S. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida for damages she allegedly sustained when the bridge collapsed. A copy of her complaint is attached as Exhibit "B."

35. On March 21, 2018, Ana Maria Oviedo, individually, and as the Personal

Representative of the Estate of Rolando Fraga, sued Figg, and MCM in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, for damages the Estate of Rolando Fraga contends it sustained because the bridge collapsed. A copy of Ana Maria Oviedo Garcia's amended complaint is attached as Exhibit "C."

36. On March 22, 2018 Katrina Collazo de Armas sued Figg, MCM, Network Engineering and Louis Berger U.S., Inc. in the Eleventh Judicial Circuit Court, in and for Miami-Dade County, Florida, for damages she allegedly sustained when the bridge collapsed. A copy of her complaint is attached as Exhibit "D."

37. On March 26, 2018, Erik Rojas, individually and as the Personal Representative of the Estate of Oswald Gonzalez, sued Figg and MCM in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, for damages the Estate of Oswald Gonzalez contends it sustained when the bridge collapsed. A copy of the complaint filed by the Estate of Alberto Arias is attached as Exhibit "E."

38. On March 26, 2018, Luis Arias, individually, and as the Personal Representative of the Estate of Alberto Arias, sued Figg and MCM in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida for damages the Estate of Alberto Arias contends were caused by the bridge collapsing. A copy of the complaint filed by the Estate of Alberto Arias is attached as Exhibit "F."

39. On March 29, 2018, Richard Luis Humble sued Figg, MCM, Network Engineering, Louis Berger U.S. Inc., Barnhart Crane & Rigging Co., Bridge Diagnostics, Inc. Structural Technologies Inc. in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida because of damages Richard Luis Humble contends were caused by the bridge collapsing. A copy of Humble's underlying amended complaint is attached as

Exhibit "G."

40. On March 30, 2018, Gina Duran and Orlando Duran (collectively "Duran"), as the co-personal representatives of the estate of Alexa Duran, sued MCM, Figg and Network Engineering in the Eleventh Judicial Circuit Court in and for Miami-Dade County. A copy of the Duran underlying complaint is attached as Exhibit "H."

41. On April 2, 2018, Carlos Eduardo Badillo and Martha Mercedes Plaza Cevallos sued Figg, MCM, Network Engineering and Louis Berger U.S. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. A copy of their complaint is attached as Exhibit "I."

42. On April 17, 2018, Chelsea Leighann Brownfield, as the personal representative of the estate of Brandon Cory Brownfield sued MCM and Figg, in the Eleventh Judicial Circuit Court in and for Miami-Dade County, a copy of her complaint is attached as Exhibit "J."

43. On April 25, 2018, Winsome Joy Campbell, individually and as the Personal Representative of the Estate of Navaro Brown, sued MCM, Figg, Luis Berger U.S., Inc., The Corradino Group, Inc., Intertek International Inc., Barnhart Crane and Rigging, Co. and George's Crane Service, Inc. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. A copy of the complaint is attached as Exhibit "K."

44. On May 18, 2018, Carlos and Erika Chapman sued Munilla Construction Management, LLC, Figg Bridge Engineers, Inc., Structural Technologies, LLC, Louis Berger US, Corradino Group, Inc., Professional Service Industries, Inc., d/b/a Intertek PSI, Barnhart Crane & Rigging and Georgie's Crane Service, Inc. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. A copy of the complaint is attached as Exhibit "L."

45. On May 2, 2018, Alexander Estupinan sued Munilla Construction Management,

LLC, Figg Bridge Engineers, Inc. and Network Engineering Services, Inc. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. A copy of the complaint is attached as Exhibit "M."

46. On May 31, 2018, Eugenia Xiomara Alvarez sued Munilla Construction Management, LLC, Figg Bridge Engineers, Inc., The Corradino Group, Inc., Louis Berger, U.S. Inc., Barnhart Crand and Rigging Co., Bridge Diagnostics, Inc., Structural Technologies, LLC, George's Crane Service, Inc., Intertek International, Inc. and Network Engineering Services, Inc. in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida. A copy of the complaint is attached as Exhibit "N."

47. On May 31, 2018, Randy Hanson and Terry Hanson, as co-plenary guardians of Kevin Lee Hanson, and for Kevin Lee Hanson, as parent and natural guardian on behalf of his minor children, Malachi Hanson, Clayton Hanson, Bryce Hanson and Bailee Ann Hanson, sued Munilla Construction Management, LLC, Figg Bridge Engineers, Inc., Network Engineering Services, Inc., Barnhart Crane and Rigging Co., Bridge Diagnostics, Inc., Louis Berger U.S., Inc., The Corradino Group, Inc., Professional Service Industries, Inc. and George's Crane Service, Inc. in the Eleventh Judicial Circuit Court, in and for Miami-Dade County, Florida. A copy of the complaint is attached as Exhibit "O."

48. Figg was and is a company that provides engineering and construction engineering services for bridges including designing, remodeling, inspecting and managing. *See* Exhibit C at ¶8 and Exhibit E at ¶12.

49. On September 30, 2015, Munilla Construction Management, LLC ("MCM") and Figg submitted a proposal to Florida International University ("FIU") for the design and construction of a bridge to accommodate pedestrian traffic between the FIU campus and the City

8

of Sweetwater. *See* Exhibit C at ¶10, Exhibit E at ¶13 and Exhibit F at ¶13.

50. Thereafter, FIU entered into a contract with MCM and Figg as a design build team for the bridge's design and construction. *See* Exhibit A through O.

51. Pursuant to the contract with FIU, MCM and Figg were in complete control of the design, construction and installation of the bridge. *See* Exhibit A at ¶14, Exhibit B at ¶15, Exhibit D at ¶19, Exhibit E at ¶14, Exhibit F at ¶14, Exhibit I at ¶17 and Exhibit N at ¶23.

52. According to the claimants, MCM and Figg acted as a unified design build team for the bridge's construction. *See* Exhibits A through O.

53. On March 13, 2018, W. Denney Pate, P.E. notified the Florida Department of Transportation that the bridge contained cracking. *See* Exhibit B at ¶51, Exhibit D at ¶61, Exhibit F at ¶21, Exhibit I at ¶33-34, Exhibit J at ¶33 to 34, Exhibit N at ¶33 and Exhibit O at ¶32-33.

54. On March 15, 2018, a Figg engineer concluded there were no safety concerns and that the structural integrity of the subject bridge was not compromised by the cracking. *See* Exhibit A at ¶51, Exhibit B at ¶52, Exhibit D at ¶62, Exhibit E at ¶24, Exhibit F at ¶24 and Exhibit I at ¶35.

55. Following that meeting, MCM and Figg performed work at the site, including post-tensioning of cables and/or stress testing at the northern-most portion of the bridge. *See* Exhibit E at ¶25 and 30, Exhibit F at ¶25 and 30, Exhibit N at ¶35 and Exhibit O at ¶26.

56. The bridge collapsed on March 15, 2018, while workers tightened the bridge's internal cables. *See* Exhibit F at ¶ 25 and 30, Exhibit H at ¶20, Exhibit N at ¶35 and Exhibit O at ¶26.

57. Phoenix is defending Figg for the lawsuits pursuant to a complete reservation of

rights.  Copies of the Reservation of Rights letters are attached as Composite Exhibit "P."

## POLICY PROVISIONS

58.     The Phoenix Insurance Company issued Primary Policy 680-6H52788A-17-47 to the Figg Group, Inc. for the Policy Period of November 1, 2017 to November 1, 2018.  A copy of the Primary Policy is attached as Exhibit "Q."

59.     Phoenix's Primary Policy contains the following pertinent terms, provisions and conditions:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I- COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**     The amount we will pay for damages is limited as described in Section III- Limits Of Insurance; and

        **(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A or B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ARCHITECTS, ENGINEERS AND SURVEYORS XTEND ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**P.    WHO IS AN INSURED- UNNAMED PARTNERSHIP OR JOINT VENTURE- EXCESS**

1. The last paragraph of WHO IS AN INSURED (Section II) is deleted and replaced by the following:

   No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Common Policy Declarations.

   However, this exclusion does not apply to your liability with respect to your conduct of the business of any current or past partnership or joint venture:

   a. That is not shown as a Named Insured in the Common Policy Declarations, and

   b. In which you are a member or partner where each and every one of your coventures in that joint venture is an architectural, engineering, or surveying firm.

2. This Provision P. does not apply to any person or organization for which coverage is excluded by another endorsement to this Coverage Part.

3. The insurance provided by this Provision P. shall be excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, which is available covering your liability with respect to your conduct of the business of any current or past partnership or joint venture that is not shown as a Named Insured in the Common Policy Declarations and which is issued to such partnership or joint venture.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

11

1. The following is added to Paragraph **2., Exclusions,** of **SECTION** I - **COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **Professional Services**

   "Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services".

2. The following is added to Paragraph **2., Exclusions,** of **SECTION I -COVERAGES - COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **Professional Services**

   "Personal injury" or "advertising injury" arising out of the rendering of or failure to render any "professional services".

3. The following is added to **DEFINITIONS** Section:

   "Professional services" means any service requiring specialized skill or training, including:

   a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

   b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service; or selection of a contractor or subcontractor; or

   c. Monitoring; testing, or sampling service necessary to perform any of the services described in Paragraph **a. or b.** above.

60. The Travelers Indemnity Company issued Umbrella Policy CUP-7635Y531 to Figg Group, Inc. for the policy period of November 1, 2017 to November 1, 2018. A copy of Travelers' Umbrella Policy is attached as Exhibit "R."

61. Travelers' Umbrella Policy contains the following pertinent terms, provisions and conditions:

12

301960044v1 1008262

**SECTION I – COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; and COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY.**

1. **INSURING AGREEMENT.**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

   \* \* \*

2. **DEFENSE OF CLAIMS OR SUITS.**

   a. We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If we elect to join in the defense of such claims or "suits", we will pay all expenses we incur.

   b. We will have the right and duty to defend any "suit" for damages which are payable under Coverages A or B (including damages wholly or partly within the "retained limit") but which are not payable by a policy of "underlying insurance", or any other available insurance, because:

      (1) Such damages are not covered; or

      (2) The "underlying insurance" has been exhausted by the payment of claims.

   c. We may investigate and settle any claim or "suit" in b. above at our discretion.

   d. Our right and duty in b. above end when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

   \* \* \*

**SECTION II – WHO IS AN INSURED.**

1. If you are designated in the Declarations as:

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured.

   \* \* \*

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

\* \* \*

**SECTION IV – CONDITIONS.**

**10.    OTHER INSURANCE.**

This insurance is excess over any other valid and collectible insurance whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise. This provision does not apply to a policy bought specifically to apply in excess of this insurance.

\* \* \*

**17.    WHEN LOSS IS PAYABLE.**

If we are liable under this insurance, we will pay for "ultimate net loss" after:

**a.**    **(1)**    The insured's liability is established by court decision; or

**(2)**    There is a written agreement between the claimant, the insured, any "underlying insurer" and us; and

**b.**    The amount of the "applicable underlying limit" is paid by or on behalf of the insured.

We will pay all claims within thirty days provided all terms of this insurance are met.

The insured will reimburse us for any payment we make for damages which are within the "retained limit".

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION- ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**1.**    The following is added to Paragraph **3. Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE; AND COVERAGE B PERSONAL INJURY AND ADVERTISING INJURY IN COVERAGES** (**Section** 1):

**Professional Services**

"Bodily injury", "property damage", "personal in-jury" or "advertising injury" arising out of the rendering of or failure to render any "professional services".

**2.** The following is added to **DEFINITIONS (Section V):**

"Professional services" means any service requiring specialized skill or training including the following:

**a.** Preparation, approval, provision of or failure to prepare, approve or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

**b.** Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

**c.** Monitoring, testing, or sampling service necessary to perform any of the services included in **a.** or **b.** above.

All other terms of your policy remain the same.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENT- WHO IS AN INSURED FOR ARCHITECTURAL, ENGINEERING OR SURVEYING ACTIVITIES- PARTNERSHIPS AND JOINT VENTURES**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE

**PROVISIONS**

The following replaces the second to last paragraph of SECTION II-WHO IS AN INSURED:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

However, if you are a partner or member of a partner-ship or joint venture whose partners or members are involved solely in architectural, engineering or survey-ing activities in connection with the partnership or joint venture and are not shown as a Named Insured in the Declarations:

**a.** You are an insured, but only with respect to your architectural, engineering or surveying activities in connection with such partnership or joint venture, and only if:

  **(1)** All partners in the partnership, or all members of the joint venture are architectural, engineering or surveying firms involved solely in architectural, engineering or surveying activities in connection with the partnership or joint venture; and

  **(2)** Such partnership or joint venture contracts the performance of all architectural, engineering or surveying activities to its individual partners or members; and

**b.** Such partnership and all its other partners, or such joint venture and all its other members, are not insureds for architectural, engineering or surveying activities, or for any other operation, work or activity.

### COUNT I – TRAVELERS AND PHOENIX HAVE NO DUTY TO DEFEND OR INDEMNIFY FIGG FOR THE CLAIMANTS' LAWSUITS BECAUSE THEIR DAMAGES ARISE OUT OF FIGG'S PROFESSIONAL SERVICES

62. Travelers and Phoenix reallege Paragraphs 1 through 61 as Paragraph 62 of Count I.

63. The claimants' lawsuits contend they were damaged by Figg when the bridge collapsed.

64. All of damages sought by the claimants against Figg arise out of Figg's acts and omissions as the engineer responsible for the bridge's construction.

65. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of Travelers' and Phoenix's obligation to defend and indemnify Figg for any damages sought in the claimants' lawsuits that were caused by Figg's acts and omissions.

WHEREFORE, Travelers and Phoenix request this Court to find and declare that Travelers and Phoenix have no obligation under their Policies issued to Figg to defend or

301960044v1 1008262

indemnify Figg in the lawsuits filed by the claimants because those damages are excluded from coverage by the professional liability exclusions in Travelers' and Phoenix's Policies.  Phoenix also requests the Court order Figg to reimburse Phoenix for the fees, costs and other expenses it incurred defending Figg against the claimants' lawsuits.

### COUNT II – TRAVELERS AND PHOENIX HAVE NO DUTY TO DEFEND OR INDEMNIFY FIGG FOR THE LAWSUITS BROUGHT BY KATRINA COLLAZA DE ARMAS, CARLOS CHAPMAN, ERIKA CHAPMAN, MARQUISE RASHAAD HEPBURN, EMILY JOY PANAGOS, CARLOS, EDUARDO BADILLO, EUGENIA XIOMARA ALVAREZ, MARTHA MERCEDES PLAZA CEVALLOS OR ALEXANDER ESTUPINAN BECAUSE THEIR DAMAGES ARISE OUT OF AN UNINSURED JOINT VENTURE OR PARTNERSHIP

66. Travelers and Phoenix reallege Paragraphs 1 through 61 as Paragraph 66 of Count II.

67. According to the complaints filed by Carlos Eduardo Badillo, Martha Mercedes Plaza Cevallos, Emily Joy Panagos, Carlos and Erika Chapman, Eugenia Xiomara Alvarez, Marquise Rashaad Hepburn, Katrina Collazo de Armas and Alexander Estupinan the bridge was built by a joint venture and/or partnership between MCM and Figg.  *See* Exhibit A at ¶13, Exhibit B at ¶14, Exhibit D at ¶14 to 19, Exhibit I at ¶16, Exhibit L at ¶20, Exhibit M at ¶13 and Exhibit N at ¶¶21 and 42.

68. The joint venture and/or partnership was never disclosed to Travelers and Phoenix.

69. There is no coverage under Travelers' and Phoenix's Policies' issued to Figg for any damages caused by the joint venture and/or partnership between Figg and MCM, as such joint venture and/or partnership was never disclosed to Travelers and Phoenix and does not qualify as an insured under either of the Policies issued to Figg.

70. In view of the foregoing, an actual and present controversy exists between the

parties as to the scope of Travelers' and Phoenix's obligation to defend and indemnify Figg for any damages sought by Carlos Eduardo Badillo, Martha Mercedes Plaza Cevallos, Emily Joy Panagos, Carlos and Erika Chapman, Marquise Rashaad Hepburn, Eugenia Xiomara Alvarez, Katrina Collazo de Armas and Alexander Estupinan that were caused by the undisclosed joint venture and/or partnership since it does not qualify as an insured.

WHEREFORE, Travelers and Phoenix request this Court to find and declare that Travelers and Phoenix have no obligation under their Policies issued to Figg to defend or indemnify Figg for the lawsuits filed by Carlos Eduardo Badillo, Martha Mercedes Plaza Cevallos, Emily Joy Panagos, Carlos and Erika Chapman, Marquise Rashaad Hepburn, Eugenia Xiomara Alvarez, Katrina Collazo de Armas and Alexander Estupinan because the joint venture and/or partnership was not disclosed to Travelers and Phoenix.  Phoenix also requests the Court order Figg to reimburse Phoenix for the fees, costs and other expenses it incurred defending Figg against those lawsuits.

HINSHAW & CULBERTSON, LLP

*/s/*MELISSA A. GILLINOV
Andrew E. Grigsby
Florida Bar No. 328383
agrigsby@hinshawlaw.com
mislacalleiro@hinshawlaw.com
Melissa A. Gillinov
Florida Bar No. 11892
mgillinov@hinshawlaw.com
smoya@hinshawlaw.com
2525 Ponce de Leon Boulevard, 4th Floor
Coral Gables, Florida 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
*Counsel For The Travelers Indemnity Company and The Phoenix Insurance Company*

301960044v1 1008262